UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AURORA VASQUEZ, et al., <br> Plaintiffs, <br> v. <br> COUNTY OF SANTA CLARA, et al., <br> Defendants. | Case No. 5:16-cv-05436-EJD <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 30 |

Plaintiffs Aurora Vasquez and Hector Lozano, Jr. bring claims arising from the death of pretrial detainee Hector Lozano. Defendant County of Santa Clara (and numerous individual defendants) now move for summary judgment on all claims. Defendants' motion will be granted.

## I. BACKGROUND

On September 18, 2014, Hector Lozano was booked into the County of Santa Clara jail on attempted murder charges. First Am. Compl. ("FAC") ¶ 39, Dkt. No. 1-1; Pls.' Am. Responsive Separate Statement ("Separate Statement") ¶ 1, Dkt. No. 45-1 Ex. A. Over the next six months, Lozano—who had an extensive history of diagnosed mental illness—suffered several acute psychotic episodes and received treatment from mental health staff. FAC ¶¶ 40–75; Separate Statement ¶¶ 2–45.

On May 15, 2015, Lozano committed suicide in his jail cell. FAC ¶¶ 76; Separate

United States District Court
Northern District of California

Statement ¶ 46.

Plaintiffs are Lozano's mother and minor son. FAC ¶¶ 1–2. Defendants are the County of Santa Clara and several individual defendants who were involved with Lozano's medical care and housing. Id. ¶¶ 3–24. Defendants now move for summary judgment on all claims. Defs.' Mot. for Summ. J. ("MSJ"), Dkt. No. 30.

## II. LEGAL STANDARD

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Samuels v. Holland American Line—USA Inc., 656 F.3d 948, 952 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). The Court "must draw all reasonable inferences in favor of the nonmoving party." Id. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. DISCUSSION

Plaintiffs bring three sets of claims: (1) the first, second, third, and fourth claims under 42 U.S.C. § 1983 for deliberate indifference (FAC ¶¶ 77−101); (2) the sixth claim for violations of the Americans with Disabilities Act ("ADA") (FAC ¶¶ 106–12); and (3) the fifth and seventh claims for wrongful death and neglect of a dependent adult under California law (FAC ¶¶ 102–05, 113–120).

### A. Deliberate Indifference

Plaintiffs bring claims under 42 U.S.C. § 1983 for violations of Lozano's First, Eighth, and Fourteenth Amendment rights against the County and the individual defendants. FAC ¶¶ 77–101. Each claim asserts that the Defendants were "deliberately indifferent to Hector's serious medical needs and safety." Id. ¶¶ 81, 85, 91, 99; see also Pls.' Am. Opp'n to Defs.' Mot. for Summ. J. ("Opp'n") 12–21, Dkt. No. 45-1.

Correctional facility officers violate pretrial detainees' constitutional rights by acting with

"deliberate indifference" to detainees' medical needs (including their need for care to prevent suicide). Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1241–43 (9th Cir. 2010). To establish a violation of the Eighth Amendment for failing to address a medical need, an inmate must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm" and (2) the official's "state of mind is one of 'deliberate indifference' to inmate health or safety." Id. at 1242 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A prison official cannot be liable for deliberate indifference under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "In other words, the official must demonstrate a subjective awareness of the risk of harm." Conn v. City of Reno, 591 F.3d 1081, 1096 (9th Cir. 2010). If the inmate was not incarcerated under "conditions posing a substantial risk of serious harm," there can be no liability for deliberate indifference. Clouthier, 591 F.3d at 1242.

The Ninth Circuit recently held that pretrial detainees' failure-to-protect claims under the Fourteenth Amendment (in contrast to claims under the Eighth Amendment) do not require a showing of the officer's subjective intent. Castro v. Cty. of L.A., 833 F.3d 1060, 1068–72 (9th Cir. 2016). A pretrial detainee can establish a Fourteenth Amendment violation by showing that he was "incarcerated under conditions posing a substantial risk of serious harm," regardless of the officer's state of mind. Clouthier, 591 F.3d. at 1242; Castro, 833 F.3d at 1071.[1]

---

[1] In addition to their claims under the Eighth and Fourteenth Amendments, Plaintiffs also assert a deliberate indifference claim under the First Amendment. FAC ¶¶ 98–101. The basis for Plaintiffs' First Amendment claim is unclear. See Castro, 833 F.3d at 1067–68 (noting that deliberate indifference claims can rest on the Eighth or Fourteenth Amendment, but making no mention of deliberate indifference claims under the First Amendment). Clouthier suggests that the subjective standard (i.e., the standard that applies to Eighth Amendment deliberate indifference claims) would apply to Plaintiffs' First Amendment claim, rather than the purely objective standard articulated in Castro that applies to Fourteenth Amendment deliberate indifference claims. 591 F.3d at 1242. However, as discussed below, the outcome of Plaintiffs' First Amendment claim will be the same under either standard because Defendants did not incarcerate Lozano under conditions posing a substantial risk of serious harm.

Case No.: 5:16-cv-05436-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
3

### i. Jay Choi

Jay Choi was a mental health therapist employed by the County. FAC ¶ 15; Defs.' Reply in Support of Mot. for Summ. J. ("Reply") 4, Dkt. No. 42. On May 13, 2015—two days before Lozano's suicide—Choi saw Lozano for a 15-minute welfare check, during which Lozano denied suicidal thoughts and reported that he was "doing pretty good." Opp'n 7, 14; MSJ 19. Choi determined that Lozano did not exhibit suicidal risk factors or self-harm behavior, and he decided to discontinue the 15-minute welfare checks. Opp'n 7, 14; MSJ 19. Choi recommended that Lozano be housed in "special management units," which house "inmates who are not under protective custody status and are seriously mentally ill or developmentally limited, but do not meet the criteria of an involuntary legal hold under section 5150." MSJ 3; Opp'n 7–8.

Plaintiffs do not disagree with Choi's professional determination that Lozano did not exhibit suicidal risk factors during his examination on May 13, 2015. Opp'n 14. Nor do Plaintiffs disagree with Choi's decision to discontinue 15-minute welfare checks. Id. at 7, 14. Rather, Plaintiffs appear to argue that Choi's actions were inappropriate because he knew that the County's policy allowed other officials (such as Mark Navarette, as discussed below) to override his housing recommendations, and that he did nothing to challenge that policy. Id. at 14. "Instead of accepting such custom and practice," Plaintiffs argue, "Choi could have continued the 15-minute checks or referred Lozano to 8A" (i.e., the unit where inmates experiencing acute psychotic episodes were temporarily housed). Id.

These allegations do not establish that Choi subjected Lozano to a substantial risk of serious harm. Based on the undisputed facts, Choi reasonably determined that, during the May 13 examination, Lozano was not a suicide risk and was not experiencing an acute psychotic episode. It was appropriate for Choi to discontinue the 15-minute welfare checks. Even if Choi had a duty to challenge the prison's housing policies, there was no reason for him to do so under these circumstances, since the undisputed facts show that Lozano did not exhibit suicidal risk factors when Choi examined him—and Plaintiffs do not dispute that Choi properly determined that

Case No.: 5:16-cv-05436-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4

Lozano was not a suicide risk at the time Choi examined him. As such, Choi did not act with deliberate indifference and he is entitled to summary judgment.

### ii. Mark Navarette

Mark Navarette "was responsible for determining the proper classification and housing for inmates." FAC ¶ 16. As discussed above, on May 13 (two days before Lozano's suicide), Jay Choi recommended that Lozano be housed in "special management units" for inmates who "are seriously mentally ill or developmentally limited, but do not meet the criteria of an involuntary legal hold under section 5150." MSJ 3. However, despite Choi's recommendation, Navarette decided to house Lozano in "E-Dorm"—which Plaintiffs describe as "a solitary confinement/administrative segregation cell with numerous hanging points" (Opp'n 1–2) and which Defendants describe as "a maximum security unit" (MSJ 9).

Plaintiffs argue that Navarette's decision regarding Lozano's housing amounted to deliberate indifference because, at the time Navarette assigned him to E-Dorm, Lozano was at risk of committing suicide. Opp'n 14–15. However, when Navarette made his housing decision, there was no indication that Lozano was actively suicidal. Rather, as discussed above, Choi had examined Lozano immediately before Navarette's decision, and he determined that Lozano did not exhibit suicidal risk factors. As a result, Choi recommended ending the 15-minute welfare checks, and did not recommend that Lozano be housed in the specialized 8A units. Since Lozano was not suicidal at the time, Navarette's housing decision was reasonable and did not put Lozano at substantial risk of suffering serious harm.

Moreover, Navarette based his decision on the fact that Lozano had recently been criminally charged for "gassing" a correctional officer (i.e., filling a container with urine and feces and throwing it at the officer). Id. Based on the evidence on the record, Navarette's decision was reasonable with respect to an inmate who had recently assaulted an officer, and who did not exhibit behavior suggesting that he was at risk for suicide. Reply 6–7. As such, Navarette is entitled to summary judgment.

Case No.: 5:16-cv-05436-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
5

### iii. John Hirokawa

John Hirokawa was "the Santa Clara County Undersheriff and the Chief of Correction, the highest position in the Department of Correction." FAC ¶ 4. Plaintiffs allege that Hirokawa was deliberately indifferent to Lozano's medical needs because he knew that cells in the prison had not been retrofitted to make them suicide resistant. Opp'n 14. Plaintiffs further allege that Hirokawa knew that the prison's mental health services were "understaffed, overworked, and inadequate." Id. at 14–15. Finally, Plaintiffs allege that Hirokawa knew that the County was "renting beds on 8A" (where suicidal inmates were temporarily housed) to other prison facilities. Id. at 15, 18.

Defendants respond that Hirokawa was never personally involved with Lozano's medical treatment or decisions about his housing. MSJ 20–21. In addition, they argue that Hirokawa was never aware of Lozano's active and imminent risk of suicide. Id. at 17–19. Defendants do not dispute that the County rented beds on 8A to other facilities; however, they argue that Plaintiffs' position is misleading because Lozano had been housed on 8A at an earlier time when the medical staff determined that he was a suicide risk. Reply 7. Defendants point out that Lozano was never denied a bed on 8A during periods when medical staff believed that he was suicidal. Id.

At the time of his suicide, Lozano was housed in a cell that had not been retrofitted to be suicide resistant. However, at the time of his suicide, medical staff had determined that Lozano did not exhibit suicidal risk factors. Opp'n 7; MSJ 19. In addition, during the times when medical staff determined that Lozano was suicidal, he was housed in specialized units (including on 8A) where he could be closely monitored to prevent a suicide attempt. The evidence shows that, when Lozano exhibited suicidal risk factors, he was housed in areas designed to prevent suicide attempts. However, at the time of his suicide, there was no indication (in the medical staff's professional judgment) that Lozano was at risk for committing suicide—and as a result, there was no need for Lozano to be housed in a specially retrofitted cell. The lack of retrofitting does not establish that Hirokawa acted with deliberate indifference.

In addition, the evidence does not support Plaintiffs' claim that the prison's mental health

Case No.: 5:16-cv-05436-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

6

services were "understaffed, overworked, and inadequate." Opp'n 14–15. Rather, the evidence suggests that the health staff regularly examined Lozano and took appropriate protective measures when they determined that Lozano's safety was at risk. For instance, on April 11–14, 2015, Lozano was placed on an involuntary 5150 psychiatric hold and specially housed in the 8A housing units. Reply 7; MSJ 17. On November 23–26, 2014, Lozano was placed on 15-minute welfare checks. MSJ 17. Lozano was again placed on 15-minute checks on May 10–13, 2015—until, as discussed above, Choi determined that 15-minute checks were no longer necessary because Lozano no longer exhibited suicidal risk factors. Id. 17–19. These facts do not establish that the prison's mental health services were inadequate. Nor do they establish that Hirokawa was aware of systemic problems with the prison's mental health services that would give rise to liability for deliberate indifference.

Finally, there is no evidence that Hirokawa was personally involved with Lozano's medical treatment or that he was aware of any imminent risk of suicide. Plaintiffs have not produced evidence showing a causal connection between Hirokawa's conduct and Lozano's suicide. See Castro, 833 F.3d at 1071 (holding that, to establish a failure-to-protect claim based on deliberate indifference, a pretrial detainee must show that "the defendant caused the plaintiff's injuries" by failing to take "reasonable measures" to abate conditions that "put the plaintiff at substantial risk of suffering serious harm") (emphasis added).

As such, Hirokawa is entitled to summary judgment.

### iv. Michael Mannstock

Mannstock was a "social services staff member" who worked with Lozano. FAC ¶ 13. Mannstock was the last person to evaluate Lozano on May 15, 2015—the day of his suicide. Opp'n 8. After examining Lozano on that day, Mannstock reported that Lozano's "mood was withdrawn," he appeared preoccupied, his behavior was composed, and he spoke slowly, appropriately, and in a subdued tone. Id. Lozano stated: "I am content right now." Id. Lozano further stated that he was not experiencing hallucinations, he stated that he was taking his

medications, and he denied homicidal or suicidal ideations. MSJ 19. Mannstock also spoke to the officer who was posted near Lozano's cell, who reported that "Lozano was respectful and calm, and gave no indication that he was experiencing distress." Id. Mannstock concluded that Lozano was not "gravely disabled." Id. Mannstock did not recommend a change in Lozano's housing, and he indicated that "officers should refer Lozano to Mental Health Crisis 'as needed.' " Opp'n 8. Lozano hung himself with his bedsheets a few hours later. Id. at 9.

Plaintiffs argue that Mannstock acted improperly by relying on Lozano's self-reporting of his mental condition. Id. at 15. According to Plaintiffs, a self-reported feeling of "contentment" indicates that a person has decided to commit suicide. Id. On that basis, Plaintiffs argue that Mannstock could have taken additional steps to protect against the risk of Lozano's suicide. Id. at 17. For instance, Mannstock could have reinstated 15-minute welfare checks, and he could have recommended that Lozano be housed in one of the special observation units for suicidal inmates. Id.

The Court finds that a reasonable trier of fact could not conclude that, when Mannstock examined him, Lozano's condition presented a suicide risk that required immediate intervention. The evidence suggests that, on several other occasions, Lozano did exhibit suicidal risk factors that prompted medical staff to take immediate measures to prevent his suicide, including placing him in special observation housing units and conducting regular welfare checks. Mannstock exercised his professional judgment to conclude that those risk factors were no longer present. As similar cases have concluded, the fact that Lozano had previously been placed on a suicide watch does not mean that Mannstock acted with deliberate indifference by examining him and determining that he was no longer actively suicidal. See Bremer v. Cty. of Contra Costa, No.15-cv-01895-JS, 2016 WL 6822011, at *9 (N.D. Cal. Nov. 18, 2016) (explaining that "knowing that someone had been placed on suicide watch—even the highest level—is insufficient to put an officer on notice that the person is in imminent danger of harming themselves," and granting summary judgment in Defendants' favor (citing Simmons v. Navajo Cty., Ariz., 609 F.3d 1011,

1018 (9th Cir. 2010))). The legal standard for deliberate indifference "does not require a defendant to take <u>all</u> available measures to abate a plaintiff's risk of suffering serious harm." <u>Id.</u> (emphasis in original).

Here, Mannstock's medical judgment may have been mistaken under the circumstances—and, in hindsight, it likely was. Such an error might give rise to a negligence claim. Deliberate indifference, however, requires more than negligence; as discussed above, to prevail on a deliberate indifference claim, a plaintiff must show the existence of "conditions posing a substantial risk of serious harm." <u>Clouthier</u>, 591 F.3d at 1242; <u>see also</u> <u>Castro</u>, 833 F.3d at 1071 (holding that, to prevail on a Fourteenth Amendment claim for deliberate indifference, a pretrial detainee must "prove more than negligence but less than subjective intent—something akin to reckless disregard"; and holding further that to prevail on an Eighth Amendment claim for deliberate indifference, the detainee must also show that the officer was subjectively aware of the risk).

The circumstances here are disturbing and disappointing. The prison staff made a determination that an inmate under their care and supervision, who had a lengthy history of serious mental illness, including being frequently diagnosed as actively suicidal, should be housed in solitary confinement shortly after a routine examination where a prison staff member came to the conclusion that Lozano was no longer at risk of harming himself. Tragically, despite that decision—or because of it—he committed suicide in the solitary cell where he was placed.

Although the conduct of the individual prison officials may not have risen to the level of deliberate indifference, this case sadly brings attention to the level of care and treatment of those in our prisons and jails who wait for adjudication while under the presumption of innocence or are serving a sentence following conviction. The prison, perhaps at a systemic level, wholly failed to protect the welfare of one of its most vulnerable inmates. Because Mannstock's personal conduct did not rise to the level of deliberate indifference he is entitled to summary judgment. But the circumstances of this case remain troubling and raise serious concerns about a prison system that

Case No.: 5:16-cv-05436-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
9

houses inmates with severe mental illness and suicidal tendencies in solitary confinement.

### v. Nancy Mager

Nancy Mager was a "social services staff member" who personally evaluated Lozano's mental health on at least one occasion. FAC ¶ 12; Opp'n 6. She was involved in Lozano's treatment "from the latter half of 2014 through April 2015," although the precise nature of her involvement is unclear. MSJ 17. On April 16, 2015 (approximately a month before Lozano's suicide), Lozano reported to Mager: "I feel improved. I was suicidal, and hearing voices, which I still do, but I am not suicidal now." Opp'n 6. On May 11, 2015 (four days before Lozano's suicide), Mager noted in an email that Lozano was housed in E-Dorm rather than in 8A. Id. She wrote: "I don't know what is going on with that, but there he is." Id.

Plaintiffs argue that Mager acted with deliberate indifference because she knew that Lozano had previously been placed under a Murphy conservatorship in other proceedings. Opp'n 15. In addition, on May 11, 2015, Mager was aware that Lozano was not housed in special observation units on 8A. Id. Plaintiffs argue that Mager should have told Mannstock that Lozano had been conserved, and she should have recommended to Mannstock that Lozano be housed in special observation units (or made her own housing recommendation to that effect). Id.

Plaintiffs' arguments fail for two reasons. First, on May 11, 2015, Lozano was already housed in an observation cell with 15-minute welfare checks. Opp'n 15; Reply 6. At that time, there was no reason for Mager to recommend that Lozano be housed in 8A (which provided specialized housing for prisoners experiencing acute psychiatric episodes). Second, there is no causal connection between Mager's action (or inaction) and Lozano's suicide. As discussed above, in the four days between Mager's email (on May 11) and Lozano's suicide (on May 15), Lozano was independently examined by Choi and Mannstock, each of whom determined that Lozano was not actively suicidal. Even if Mager had acted unreasonably (which the record does not support), the intervening examinations break the chain of causation between her conduct and Lozano's death. Similarly, there is no causal connection between Lozano's suicide and her treatment of him

Case No.: 5:16-cv-05436-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

from 2014 to April 2015. As such, Mager did not act with deliberate indifference and she is entitled to summary judgment.

### vi. County of Santa Clara

A governmental entity can be held liable under § 1983 if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (citing Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under Monell, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.' " Id. (quoting Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)).

Here, Plaintiffs have not established an underlying constitutional violation. See id. (holding that a plaintiff must show that she "possessed a constitutional right of which [s]he was deprived"). As discussed above, none of the County's employees acted (or failed to act) in a way that violated Lozano's constitutional rights. Thus, the County of Santa Clara cannot liable under Monell. See City of L.A. v. Heller, 475 U.S. 796, 799 (1986) ("[N]either [Monell] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.").

### B. Americans with Disabilities Act

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability,

unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). "Unjustified isolation . . . is properly regarded as discrimination based on disability." Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 597 (1999).

To state a claim under Title II of the ADA, a plaintiff must allege that "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

Here, Plaintiffs argue that "Lozano was classified by the jail to be housed in isolation/administrative segregation, the most restrict [sic] area of the Jail, based on conduct that was specifically linked to his mental illness." Opp'n 24. Plaintiffs do not identify the "conduct" that was "linked to his mental illness." Nor do they explain how Defendants' housing decisions constituted discrimination on the basis of disability. Nonetheless, the Court infers that the conduct at issue was the incident where Lozano "gassed" a correctional officer (i.e., where he filled a container with urine and feces and threw it at the officer). MSJ 8. As discussed above, on May 12, 2015, Officer Mark Navarette decided to house Lozano in E-Dorm "[b]ecause Lozano gassed a correctional officer" (Opp'n 14), and because "Lozano no longer satisfied the threshold for an involuntary 5150 hold and on the multitude of factors considered by the Classification Department, including Lozano's protective custody status" (MSJ 18–19).

Even with this inference, however, the Court finds that Plaintiffs have not established that Defendants violated the ADA. There is no evidence showing that Defendants decided to house Lozano in E-Dorm because of his disability. Rather, the evidence suggests that the housing decision was based on Lozano's behavior, including gassing a correctional officer, and from his

Case No.: 5:16-cv-05436-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
12

protective custody status (which resulted from his status as a former gang member). MSJ 2–4. The fact that Lozano was mentally disabled does not mean that the housing decision was discriminatory. See, e.g., Simmons, 609 F.3d at 1021–22 (affirming a grant of summary judgment in the defendants' favor on plaintiffs' ADA claim where the plaintiffs failed to show that the prison's housing decision was motivated by the prisoner's disability). Plaintiffs have failed to make a prima facie case that Defendants discriminated against Lozano or that he was "excluded from participation in or denied the benefits of [Defendants'] services, programs, or activities." McGary, 386 F.3d at 1265. Summary judgment is therefore warranted in Defendants' favor.

### C. Wrongful Death

Plaintiffs discuss their wrongful death claim in a single paragraph in their opposition brief:

> To prove wrongful death, Plaintiff must show: 1) a wrongful act or neglect on the part of one or more persons that 2) causes 3) the death of another person. Garcia v. Cnty. of Fresno, 2005 WL 3143429 at *6 (E.D. Cal. Nov. 21, 2005)(citing Cal. Code Civ. Proc. §377.60 and Norgart v. Upjohn Co., 21 Cal.4th 383, 390 (1999). Plaintiffs' have demonstrated as a matter of disputed fact that Defendants failed to take appropriate actions to address the substantial risk of death to Mr. Lozano and these omissions were a direct and proximate cause of his death. Plaintiffs' wrongful death claim includes the claim that the Individual Defendants failed to summon immediate medical care.

Opp'n 24. Plaintiffs do not identify any evidence showing how Defendants "failed to take appropriate actions to address the substantial risk of death" or how Defendants "failed to summon immediate medical care." The evidence on the record shows that the opposite is true: Defendants routinely provided medical care to Lozano, and on multiple occasions they determined that his suicide risk was high and took appropriate measures to mitigate that risk. Summary judgment is warranted in Defendants' favor.

### D. Neglect of Dependent Adult

Plaintiffs' complaint contains a claim for neglect of a dependent adult in violation of the Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welfare & Institutions Code § 15610.57. FAC ¶¶ 113–20. In their motion for summary judgment, Defendants argued that this

Case No.: 5:16-cv-05436-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
13

Act's remedies are not available to inmates of county jails—and, even if they were, Plaintiffs have not presented evidence of "malicious, oppressive, and abusive conduct" as the Act requires. In their opposition brief, Plaintiffs do not respond to Defendants' argument or provide any other discussion of their claim for neglect of a dependent adult. As such, Defendants are entitled to summary judgment. See Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [and] grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it.").

### E. Claims against Remaining Defendants

Defendants Doe 4 and Doe 6 have not been identified. See FAC ¶¶ 7, 9. Since fact discovery is closed (see Dkt. No. 13), these two Defendants must be dismissed.

In addition to the individual Defendants discussed above, six other individual Defendants have been named in this case: Maryann Barry, Mark Bruguera, Laura Ferguson, Blanca Hoyt, Beverly Purdy, and Erica Rivera. Plaintiffs did not mention these Defendants in their opposition brief. Summary judgment is therefore warranted in favor of these six Defendants. See Fed. R. Civ. P. 56(e).

## IV. CONCLUSION

Defendants' motion for summary judgment is GRANTED. The Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: December 20, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-05436-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
14